

1  Edward D. Fagan
2  5708-01 Arbor Club Way,
3  Boca Raton, FL 33433
4  Phone: (561) 372-929
5  Fax: (561) 948-2707
6  Email: faganinternational@gmail.com
7  Plaintiff Pro Se

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CV12-7582 PA (MANx)**

CASE NO.

---------------------------------------------------------

Edward D. Fagan, individually, and as a member       :
of the "Interest Association of Wertheim Heirs",      :
                              **Plaintiff**           :
                                                      :
         **Versus**                                   :
                                                      :
                                                      :
**Deutsche Bank AG,**                                 :        **COMPLAINT**
     **a/k/a Deutsche Bank Berkshire Mortgage Inc.,** :        **(with jury demand)**
     **Deutsche Bank Insurance Agency Incorporated,** :
     **and Deutsche Bank Securities Inc.**            :
                                                      :
**Deutsche Bank (Suisse) Geneva,**                    :
     **a/k/a Deutsche Bank AG,**                      :
     **Deutsche Bank Berkshire Mortgage Inc.,**       :
     **Deutsche Bank Insurance Agency Incorporated,** :
     **and Deutsche Bank Securities Inc.**            :
                                                      ;
**Deutsche Bank (Spain) SA,**                         :
     **a/k/a Deutsche Bank AG,**                      :
     **Deutsche Bank Berkshire Mortgage Inc.,**       :
     **Deutsche Bank Insurance Agency Incorporated,** :
     **and Deutsche Bank Securities Inc.**            :
                                                      :
**Hans Hoffmann, deceased, Consul General of**        :
**Germany to Kingdom of Spain in Malaga**             :
                              **Defendants**          :
---------------------------------------------------------- **X**

        Edward D. Fagan, Plaintiff pro se, hereby declares and says, the following upon information

and belief:

1



SEP - 5 2012

**INTRODUCTION**

1)      This action is brought for damages caused by acts starting in the last days of World War II, continuing into the 1970s, 1980s, 1990s and which continue to this day and through which a high ranking Nazi was installed into a position of power and influence in Spain, originally by the Nazi Regime and then confirmed and permitted to continue in his position by the post World War II government of the Federal Republic of Germany.  This Nazi agents cover identity was that of an Honorary "Consul General"; however one of his official duties was to continue the ideological and political goals of The Nazi Party and *Operation Werwolf*[1], *i.e.* to operate in post WW II Spain, during the "Franco Regime".

2)      The agent selected for this position was Captain Hans Hoffmann - former Gestapo Agent, Liaison Officer with the Blue Division and personal confidant of Adolf Hitler.  *See Exhibit 1 (Hitler – right, Hoffman – center).*

3)      Hoffman was empowered by both the post World War II German Government and the post Franco Regime Spanish Government.

4)      Hoffmann's official duties as an Operation Werwolf Agent were included helping to promote and facilitate the goals of and ideologies of the Nazi Party.

5)      Other official duties of Hoffmann as an agent of *Operation Werwolf* was to help Nazis flee Germany after World War II to "friendly" countries, mostly in South America, where they could live safely without fear of being discovered.

6)      Still other official duties of Hoffmann as an agent of *Operation Werwolf* was to help protect and conceal assets, including cash, bear stocks and artwork, that were looted by the Nazis and/or which were transferred into Spain and/or to help with the transfer of these looted assets from Spain to other countries.

---

[1]      *http://en.wikipedia.org/wiki/Werwolf and http://www.tau.ac.il/Anti-Semitism/asw98-9/spain.htm*

1      7)      Once installed in Spain, with full authority of German & Spanish Governments,

2    Hoffmann used his position to "mastermind" systematic transfers, looting and concealment of assets

3    that Nazis originally stole from Holocaust victims or Jewish families already in Spain, assets that

4    were to be transferred to Spain or that were still in the hands of persons from whom Hoffmann and

5    his agents targeted for the thefts.

6      8)      True to his training, Hoffmann proceeded to use a network of (i) agents, (ii) lawyers [2],

7    (iii) art dealers, auction houses and trustees [3], and (iv) banks and bankers located in Spain,

8    Switzerland and Germany [4] to plunder and conceal the assets from one of the greatest Jewish family

9    dynasties, The Wertheim Family, the majority of whom were killed in the Holocaust and the sole

10   remaining heir who survived the Holocaust, and escaped to Spain, became a victim to this scheme.

11      9)      The looted assets are believed to be in excess of one billion dollars and included (i) bank

12   accounts, (ii) safe deposit boxes, (iii) precious gems and metals, (iv) real estate holdings [5], (v) bearer

13   bonds, (vi) corporate assets [6], (vi) collections of artwork [7], antique clocks, Aubusson tapestries,

---

[2]    The lawyers Hoffmann used included Luis Marimón Garnier ("Marimón"), General Counsel of Deutsche Bank Spain and General Secretary in charge of Deutsche Bank Spain legal affairs and his firm Marimón Abogados. He was also the General Secretary of Hispano Olivetti SA and is still General Secretary of Olivetti España SA, the Former Hispaña Olivetti Office SA.

[3]    The art dealers included Mr. Leutmeier and Urban & Perigal in Munich, Germany. The auction houses included Sotheby's and Christie's. The trustees included Mrs. Muller, Mr. Lang and Mr. Schiavone of Interwiko AG in Switzerland, Mr. Odi Graentz of Intertrade Development and Finance Limited of Knightsbridge, London, Marimón of Defendant Banks in Spain, Germany & Switzerland.

[4]    The banks used by Hoffmann were Defendant Banks and its officers, directors and representatives Marimón as General Counsel of Deutsche Bank Spain and General Secretary in charge of legal affairs at Deutsche Bank Spain and Messrs. Diehr and Espinoza of Deutsche Bank Geneva.

[5]    The real estate holdings were in Spain and The United States.

[6]    The corporate assets were those that The Wertheim Family was able to build in Spain in the early 1900s and other assets The Wertheim Family transferred to Spain to protect them from the Nazis, including Rapida SA, the former La Casa Wertheim and other interests Hispano Olivetti SA and Comercial Mechano Grafico SA.

[7]    Some of the artwork that is subject of this claim are masterpieces, such as Piedra, Tintoretto, Rubens, Goya, Matisse, Tomasso and others, that belonged to The Wertheim Family and which were or are still in the Museo del Prado in Madrid, Museo Nacional d'Art de Catalunya in Barcelona and other museums. These assets may also include a masterpiece from The Wertheim Family collection – *"The Triumph of The Eucharist"* painting and tapestry by Peter

3

1  Madonnas, furniture, antique tables and rugs, (vii) Judaica and (viii) other valuable assets.

2      10)    What Hitler, Himmler, Göbbels, Göring and Eichmann did not finish in the systematic

3  looting of the wealth of Europe's great Jewish dynasties, such as the Rothschilds, Warburgs,

4  Deutschs, Hertzogs and Hatvanys, Former Gestapo Agent / then Consul General Hoffmann with the

5  aide of willing, reckless or greedy German Banks and others accomplished against The Wertheim

6  Family and its fortune and holdings in Spain, Switzerland and throughout Europe and The USA.

7      11)    The acts were taken not just out of opportunity.  They were taken as part of a perverse

8  and illegal duty to complete the goals of *Operation Werwolf* and were motivated by greed, hatred

9  and loathing for Jews and the wealth and charity that were personified by The Wertheim Family. [8]

10     12)    As a direct and proximate result of this conspiracy and fraud, heirs and successors to the

11  interests of The Wertheim Family fortune, including Jewish educational, charitable and

12  philanthropic organizations, have been deprived of support promised to them by the last heir of The

13  Wertheim Family – Dr. Ambrosius Wolfgang Bäuml. [9]

14                                **PARTIES**

15     13)    Edward D. Fagan ("Plaintiff" or "Fagan" or "Plaintiff Fagan") is an individual residing at

16  5708-01 Arbor Club Way, Boca Raton, FL  33433.  Plaintiff Fagan is an owner of certain rights to

---

Paul Rubens – which is currently one of the main pieces and cornerstones of The John and Mable Ringling Museum of Art in Sarasota, Florida.

[8]      Hoffmann's hatred and contempt for Dr. Bäuml and The Wertheim Family and for the charity they stood for was concealed during Dr. Bäuml's life and was only expressed after Dr. Bäuml was dying and later dead and after the money and assets had been taken.

[9]      Plaintiff Fagan is one of several holders of rights to The Wertheim Family assets.  Plaintiff Fagan is part of and cooperates with other holders of rights to The Wertheim Family assets, and refer to themselves as the *"Interest Association of Wertheim Heirs"*, all of whom acquired their rights from the estate of Dr. Bäuml and all of whom share a common purpose and goal to locate, recover and distribute The Wertheim Family fortune in accordance with the families historical commitments and the wishes of Dr. Bäuml that their money benefit educational, cultural and charitable institutions, particularly Jewish schools and creating a meaningful life and environment for the elderly.

4

1   the estate of The Wertheim Family.   Plaintiff Fagan is also a "member" of the "Interest Association

2   of Wertheim Heirs". [10]

3          14)     Deutsche Bank AG ("Deutsche Bank") is a German Bank headquartered at Taunusanlage

4   12, 60262 Frankfurt am Main, Germany and which maintains offices at 2000 Avenue of the Stars,

5   Suite 910-N, Los Angeles, CA 90067, 300 South Grand Avenue, 40th & 41st Floors, Los Angeles,

6   CA 90071 and offers banking services for private wealth management, private & business clients

7   and corporate clients and does business under its own name and also as Deutsche Bank Berkshire

8   Mortgage Inc., Deutsche Bank Insurance Agency Incorporated and Deutsche Bank Securities Inc.,

9   this judicial district.

10         15)     Deutsche Bank (Suisse) SA ("Deutsche Bank Geneva") is a wholly owned entity of

11  Deutsche Bank which maintains offices at Place des Bergues 3, Geneva, Switzerland and which

12  conducts business at 2000 Avenue of the Stars, Suite 910-N, Los Angeles, CA 90067, 300 South

13  Grand Avenue, 40th & 41st Floors, Los Angeles, CA 90071 and offers banking services for private

14  wealth management, private & business clients and corporate clients and under Deutsche Bank's

15  name and also in and through Deutsche Bank Berkshire Mortgage Inc., Deutsche Bank Insurance

16  Agency Incorporated and Deutsche Bank Securities Inc., this judicial district.

17         16)     Deutsche Bank Spain SA ("Deutsche Bank Spain") is a wholly owned entity of

18  Defendant Deutsche Bank, maintains offices at Avda. De Madrid, 1, 08028 Barcelona, Spain, 7 Av.

19  De Andalucía, 29002 Malaga, Spain, Avda. Ricardo Soriano, 39, 29600, Marbella, Spain and and

20  which conducts business at 2000 Avenue of the Stars, Suite 910-N, Los Angeles, CA 90067, 300

21  South Grand Avenue, 40th & 41st Floors, Los Angeles, CA 90071 and offers banking services for

22  private wealth management, private & business clients and corporate clients and under Deutsche

---

[10]     The "Interest Association of Wertheim Heirs "is a fictitious (or doing business as) name registered in Florida
and a trademark application in pending.

1  Bank's name and also in and through Deutsche Bank Berkshire Mortgage Inc., Deutsche Bank

2  Insurance Agency Incorporated and Deutsche Bank Securities Inc., this judicial district.

3      17)    Defendants Deutsche Bank, Deutsche Bank Geneva and Deutsche Bank Spain are

4  collectively referred to through this complaint as "Defendant Banks".

5      18)    Defendant Banks had in their employ the following individuals who were the directors,

6  officers and representatives of Defendant Banks and for whom Defendant Banks were liable under

7  the principles of respondent superior and/or principal/agent, including: (a) Luis Marimón Garnier

8  ("Marimón"), General Counsel of Deutsche Bank Spain and General Secretary in charge of legal

9  affairs at Deutsche Bank Spain; and (b) Pierre Diehr and Jaime Espinoza of Deutsche Bank Geneva.

10     19)    Consul General Hans Hoffmann a/k/a Juan Hoffmann ("Hoffmann") deceased was an

11 agent, official and representative of The Federal Republic of Germany [11] and acted with the

12 blessings and protection and impunity given to him by The Kingdom of Spain. [12] [13]

13                          **JURISDICTION & VENUE**

14     20)    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (action against

15 a foreign nation); and 28 U.S.C. § 1332 (diversity jurisdiction).

16     21)    Defendant Estate of Hoffmann does not enjoy sovereign immunity under the principles

17 articulated by the Supreme Court in *Samantar v. Yousuf, 130 S. Ct. 2278 (2010)*.

---

[11]    The Federal Republic of Germany is responsible for the acts of Defendant Hoffmann and is not yet named as a defendant in this action.

[12]    The Kingdom of Spain is responsible for the acts of Defendant Hoffmann but is also not yet named as a defendant in this action.

[13]    The Estate of Hoffmann was implicated in one of greatest frauds in Spanish history – The Malaya Scandal. The son and one heir to The Estate of Hoffman was convicted for his part in The Malaya Scandal and is currently serving a prison sentence for charges including fraud, embezzlement, and laundering of monies through Swiss and Lichtenstein Banks (perhaps a trick he learned from Hoffman himself). During the investigation or trial when questioned about the source of his monies, Hoffmann's son is believed to have said that his wealth came as a "gift" from the estate of an "Old Jew" from Germany who was living in on the coast – meaning Malaga – and that he inherited a "foundation from the Old Jew" which were unmistakable reference to Dr. Bäuml.

1    22)    Jurisdiction and venue is proper in this judicial district as Defendant Banks conduct

2    business in this judicial district and Defendant Hoffmann can be sued in any judicial district as a

3    former official of The Federal Republic of Germany and since one or more of the conspirators can

4    be found in this judicial district.

5                          **STATEMENT OF FACTS**

6    **Installation of Gestapo & Operation Werwolf Agent – Hoffmann in Spain**

7    23)    From 1940 to 1944, Gestapo Agent and personal confidant of Adolf Hitler – Captain

8    Hans Hoffman served as personal translator for Hitler and other visiting officials in Spain of the

9    Nazi Regime during revered talks between Hitler, Franco and Franco's Generals.  *See Exhibit 1*

10   *(Hitler, right – Hoffmann, center – and Franco's Aide, left).*

11   24)    As part of Operation Werwolf, in or about March/April 1944 Himmler and Göbbels

12   dispatched Agent Hoffmann to Spain where he was to assist the Reich and successors to the Third

13   Reich. *See FN # 1 above.*

14   25)    Hoffman's job was to assist in the relocation, collection, marshaling and concealment of

15   looted assets so that they could be available to promote the post war individual and collective goals

16   and ideologies of the Nazi party.

17   26)    After the fall of the Nazi Regime, Hoffmann was formally installed as Honorary Consul

18   General of The Federal Republic of Germany in Malaga.

19   27)    The Kingdom of Spain officially welcomed Hoffmann and extended to him the courtesies,

20   power, privileges and status as an official of Defendant Germany and a protected him and his

21   activities in Spain.

22   28)    With the knowledge of Defendants Germany and Spain, Hoffmann continued to execute

23   the goals of *Operation Werwolf.*

7

29)     Using his official position, Hoffmann enticed Dr. Bäuml to deposit critical business documents with him and to give Hoffmann authorizations to conduct certain business affairs for him by asking Dr. Bäuml for a personal power of attorney for such matters.

30)     Although Hoffmann developed acquaintances and "friendships" with certain Jewish families, such as Wertheim, he was a true Nazi, who used his position to also assist former SS and Gestapo officers, hide, establish new identities and then re-settle them in various South American countries, all of which was part of his duties in *Operation Werwolf.*     *See Spiegel Nr. 36 / 1963 "Gast bei Juanito" and. Spiegel Nr. 9 / 1980 "Dann Kommt Alles ins Rollen".*

31)     All the while, Hoffmann was not a wealthy man, did not have significant assets and he lived within "normal" economic conditions.

32)     Yet, a short time after the death of Dr. Bäuml on 2 August 1990, Hoffmann suddenly came to be in possession of enough money to create a foundation in Munich for his family and heirs.

33)     By the time Hoffmann died in 1996, within a few years after the death of Dr. Bäuml, his family had somehow amassed a personal wealth, through which his daughter, son [14] and second wife were set for life. [15]  Hoffman's son was the owner of a Swiss company, the UFM AG, a Lichtenstein foundation and other corporations.

34)     In 2010 and 2011, Hoffmann's son told the heirs representatives that his family fortune came from real estate transactions via Mr. Voegele of Switzerland, who made business in Spain, especially near Malaga in Marbella.

---

[14]     Hoffman's son, Juan German Hoffmann, was part of the largest real estate scandal in the history of Spain – the case of "Malaya" – and in it Hoffmann's son was the "launderer" of looted funds.  This corruption and money laundering scandal has led to secret accounts in Switzerland and Liechtenstein.  In a police interview Hoffmann's son was asked where he had his large fortune and he is believed to have replied that he got this money from his father, who got it from "German who has lived here on the coast, get transferred to a foundation".  This reference is to Dr. Bäuml.

[15]     In Court records from the Malaya case, one accused provided evidence that Hoffmann's son gave him a three million Euro via Swiss company, UFM Holding AG, and its company Fink 2010 AG.

8

**The Wertheim Family from Frankfurt am Main – German Jewish Dynasty**

35)     The Wertheim Family from Frankfurt am Main (hereafter referred to as "The Wertheim Family") was one of the greatest Jewish families in Germany's history and perhaps even in all of Europe and European history.  The Family Wertheim had strong connections to Switzerland, Lichtenstein, Australia, Austria, Great Britain and The USA.

36)     Dr. Ambrosius Wolfgang Bäuml was born 11th July 1921 in Herne Germany and who was the last heir of the Jewish dynasty Wertheim.

37)     The Wertheim Family had a long and proud relationship with Germany and conducted their international business from Europe.

38)     Dr. Bäuml was the great nephew of Joseph Wertheim, a close friend of Reich Chancellor von Bismarck. Dr. Bäuml was the nephew of Karl Wertheim aka Carlos Vallin Ballin and Maria Wertheim, nee Wischanowska Gawronska, aka Maria Vallin Ballin.

39)     The Wertheim Family were to The German Jewish Community and the German Aristocracy, what The Rothschild & Warburg Families was to France and what The Herzog & Hatvany Families were to Hungary.

40)     The Werthheim Family was one of the most influential families in German Industrial History and very socially attuned.

41)     The Wertheim Family is still today well known throughout Germany and all over Europe and the USA for their social engagements.

42)     As was customary amongst the Jewish families in Europe both before and after World War II, The Wertheim Family wealth was divided throughout banks, safe deposit boxes, trustee accounts and foundations including ones in Germany, Spain, Switzerland, Lichtenstein, England and the United States.

9

43)   The Wertheim Family accumulation of wealth began in or around 1873, when patriarch Josef Wertheim founded a branch in Spain of his Wertheim Sewing Machine Company - Nähmschinenmanufaktur - and built up an independent production.

44)   The Wertheim Family had ten children. Of the ten children, six were killed or perished during World War II during the Nazi Regime. Two girls escaped to Australia, one girl to the United States and one son escaped to Spain.

45)   It was the fifth child of The Wertheim Family, Karl (a/k/a Charles or Carlos) Wertheim, who emigrated to Spain and stayed there during World War II.

46)   In Spain, Karl Wertheim took over the Spanish Branch of The Wertheim Family Sewing Machine Company, which in Spain went by the name "La Casa Wertheim".

47)   To obliterate all traces and connections he had to Germany, Karl Wertheim changed his name to Carlos Vallin Ballin, which incorporated the maiden name of his mother, which was a respected name and family in Spain and founding family of today's Hapag Lloyd Logistic Group.

48)   In 1920, Karl founded the Wertheim Rapida SA (also known as SA Rapida), which continued the activities of La Casa Wertheim on the sewing machine industry.

49)   Gradually, with the establishment of Rapida SA the Frankfurt-machine production was gradually reduced, and the assets were incorporated in the Rapida SA.

50)   Rapida SA became Spain's largest sewing machine manufacturer and one of Catalonia's most important export companies. Rapida SA continued the business of the Wertheim's German sewing machine manufacturer but it did so from Spain.

51)   When the Nazis seized power in 1933, the remaining and able members of The Wertheim Family shifted The Wertheim Family assets to Switzerland and Swiss Banks, who promised identity protection and protection from seizure by the Nazis in the form of numbered accounts, trustee accounts under different names and safe deposit boxes.

52)     The Wertheim Family assets, including real estate holdings, bear bonds, stocks, corporate assets, collections and all valuables were brought to Switzerland and deposited into various banks.

53)     The Wertheim Family assets that were primarily deposited into Schweizerische Kreditanstalt (predecessor to Credit Suisse), Berner Kantonal Bank and Deutsche Bank.

54)     These assets were established in a carefully constructed web of guardianship, corporate, estate and trustee accounts, real estate holdings, foundations and safe deposit boxes.

55)     With the takeover of the Spanish Government by Generalisimo Francisco Franco in 1939, the connections between Hoffmann, Franco (Spain) and Nazis started to solidify. *See Exhibit 1 – Photograph of Franco's Aide, Hoffmann and Hitler.* [16]

56)     Under Franco's Spain, Karl was required to report the Wertheim Family assets to the Comite de Moneda Extranjera, *"The Committee for Foreign Monies"* and at that time he reported his foreign assets in Switzerland.

57)     Karl Wertheim married Mary Wertheim, born Wischanowska Gawrońska.

58)     Due to his personal illness, in 1936 Karl Wertheim transferred greater responsibility for the management of The Wertheim Family assets to his wife Maria.

59)     In 1939, Karl transferred the majority of its bearer shares in Rapida SA to wife Maria.

60)     Karl died on 24 August 1945 and Maria then became the sole and rightful heir and manager of The Wertheim Family fortune.

61)     Karl and Maria were unable to have children.  However, Maria insisted that The Wertheim Family name and tradition must continue.  So, she urged her husband Karl to take her sister Victoria who could give the Wertheim Family an heir.   The child born of this union was Ambrosius Wolfgang Bäuml ("Bäuml"), who Karl and Maria decided would be the heir of The Wertheim Family Legacy and assets.

---

[16]     Hoffmann's relationship with Hitler and Spain began as official translator for Hitler in negotiations with Franco, continued as other high-ranking Nazis during World War II negotiated various pacts with Franco's Spain and continued after 1945 with the implementation of *Operation Werwolf.*

11

1      62)    Prior to her death, Maria instructed young Bäuml in The Wertheim Family financial

2  affairs. She took him on countless trips to Switzerland and Liechtenstein and over time Dr. Bäuml

3  became estute in the management of the property and financial matters of the Wertheim family

4  which by this time was primarily located, deposited in and entrusted to Credit Suisse AG.

5      63)    During his life time, Bäuml was instilled with a strong commitment to his families with

6  German and Jewish heritage. He studied economics in Berlin and during this time, he developed a

7  relationship with the former CEO of Deutsche Bank AG, Dr. Hermann Josef Abs, head of Deutsche

8  Bank before and after WW II and was one of the most powerful financial managers in Germany.

9      64)    Throughout his life, The Wertheim Family heir Dr. Bäuml lived a modest life, and he

10  never disclosed the incredible wealth and assets, including cash in bank accounts, stocks and bearer

11  bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks,

12  furniture & Judaica collections and other assets.

13      65)    Prior to his death - Dr. Bäuml – continued the commitments of The Wertheim Family,

14  making generous contributions to a variety of philanthropic, arts, educational and jewish charities

15  and institutions.

16      66)    Perhaps the greatest mistake that Dr. Bäuml made was to allow himself to be drawn in by

17  Hoffmann and his agents including lawyers Marimón [17] and his firm Marimón Abogados; art dealers

18  including Mr. Leutmeier and Urban & Perigal; auction houses included Sotheby's and Christie's;

19  trustees including Muller, Lange and Schiavone; and Defendant Banks in Spain, Germany &

20  Switzerland; and bank officers Marimón, Diehr and Espinoza, who during the period from the 1980s

---

[17]    Marimón was, on the one hand an officer / director at Deutsche Bank and on the other hand he served as trustee of certain assets and accounts of Dr. Bäuml at Credit Suisse.  As partners and in furtherance of the plan to transfer, conceal and later use assets in trust, Marimón was in a unique position to first transfer the assets from Credit Suisse to one of the Deutsche Bank branches in Switzerland over which he could exercise greater control and authority and from which some of the assets were transferred for the benefit of Hoffman, Marimón and others and other assets still remain unaccounted or disappeared entirely.  The failure to recognize a potential or inherent conflict of interest as well as the breach of the trust relationship, when the monies were transferred from Credit Suisse to Deutsche Bank was a wrongful act of Marimón and a failure of Deutsche Bank to properly control its' officer / director or make proper inquiry into the source and beneficial ownership of the transferred funds.

12

1  to the early 1990s without the knowledge of Dr. Bäuml, transferred, syphoned off, misappropriated,

2  looted and concealed the majority of the accumulated wealth of The Wertheim Family.

3      67)    On his deathbed, Dr. Bäuml still believed The Wertheim Family fortune was safe at

4  Credit Suisse and had no knowledge that assets had been transferred from Credit Suisse to

5  Defendant Banks from which they disappeared or was misappropriated by Hoffmann and his co-

6  conspirators.

7      68)    After Dr. Bäuml's died, Rudolf and Giselheide Sutor were about to become appointed

8  and recognized by the German Courts as the official heir to the estate of Dr. Bäuml.  This process

9  would normally take a matter of a month or so and is routine.  Had this happened, Hoffmann and

10  Defendant Banks past actions might have been discovered in time to take appropriate steps to secure

11  and recover transferred assets.   And, had this happened Hoffmann's plans to further transfer,

12  liquidate and conceal Dr. Bäuml's assets would have been stopped. So, Hoffmann used his position

13  as Consul General of Germany to threaten the Sutors and to delay their ability to be expeditiously

14  appointed and recognized as the heirs of the estate of Dr. Bäuml.

15      69)    In this way, after Dr. Bäuml's death, Hoffmann and Defendant Banks' directors and

16  agents were able to:

17      a)  Seize control of the 30,000 m$^2$ farm in which much of the artwork, antiques, tapestries and

18          other valuables were stored and prevented the lawful heirs from gaining access to secure the

19          artwork and assets which he sold the farm [18] and shortly thereafter (i) the artwork, antiques,

20          tapestries and other valuables disappeared;

---

[18]     For the sale of the farm, Hoffmann used a convicted German criminal from Germany named Peter Schianski.

13

1       b)  Transfer to himself nine million Deutsche Marks in cash with which he purchased the

2             buildings of the Hanns Seidel Stiftung and gave them to the Deutsche Schule in Ojen –

3             Marbella, now called German School Juan Hoffman [19];

4       c)  Together with the trustees and art dealers, Hoffmann orchestrated the transfers and

5             liquidation of assets from the bank accounts, foundations and safe deposit boxes in

6             Switzerland and Lichtenstein; and

7       d)  Liquidate the assets of Hispano Olivetti Office SA, which included Hispano SA Olivetti

8             Office and The Wertheim Castle, known as "Teya", was liquidated and disappeared into the

9             hands of Hoffman and his agents, including Marimón. [20]

10     70)     All of this was done without the knowledge consent or approval of Dr. Bäuml or his true

11  heirs, Mr. Rudolf Sutor and his wife Mrs. Giselheide Eichhammer Sutor.

12            **Search for the Missing Wertheim Family Assets & Equitable Tolling**

13     71)     During the period from 1990s to the present the heirs to the Wertheim Family attempted

14  to locate and trace the assets.

15     72)     In this regard, they approached and demanded information from Credit Suisse, Defendant

16  Banks and their agents.

17     73)     From the 1990s to 2010, Credit Suisse, where The Wertheim Assets were originally

18  located and deposited before Hoffmann and his agents secretly transferred them to Defendant Banks,

19  denied any connection to The Wertheim Family assets, or Dr. Bäuml, or to any company in the name

20  of Dr. Bäuml or to which he was the beneficial owner.

21     74)     From the 1990s to present, Defendant Banks concealed all records of the relationship and

22  trustee accounts they opened pursuant to the plan and scheme orchestrated by Hoffmann.

---

[19]    The information on the sudden appearance of 9 million Deutsche Marks in the hands of Hoffmann to buy the building for the German School came from Dr. Benkendorf, legal adviser of the German School in Marbella.

[20]    Much of the artwork, antiques and other valuables that were collected by The Wertheim Family were housed in Castle Wertheim at Tera.

75)     At the end of 2009, again in late spring 2010 and then again in the fall 2010, the prior heirs to The Wertheim Family assets and estate of Dr. Bäuml met with German business and tax consultants from whom they sought assistance in how to go about and who could help them gather documents and information about the disappearance of The Wertheim Family fortune and the transfers, location and disposition of assets.

76)     In early 2011, an investigator and Jewish communal leaders were consulted to see what if any help they could provide as to how documents and information about the disappearance of The Wertheim Family fortune and the transfers, location and disposition of assets, could be gathered so the heirs could try to understand if they had a claim and if so against whom and based upon what cause of action.

77)     In 2011, the heirs wrote to Credit Suisse informing it that they had discovered the reference to Credit Suisse in one of Dr. Bäuml's diaries and requested Credit Suisse's assistance in trying to locate documents and information about the disappearance of The Wertheim Family fortune and the transfers, location and disposition of assets.

78)     In October 2011, Credit Suisse agreed to a meeting with the heirs' investigator and consultant, and at the meeting, Credit Suisse denied having knowledge, documents or information about the disappearance of The Wertheim Family fortune and transfers, location and disposition of assets of Dr. Bäuml. Credit Suisse's answer was given the next day and stated in effect:

> . . . *We have done intensive research in our headquarters and in our affiliate in Switzerland and can tell you that we have no banking relations including bank accounts with numbered accounts and pseudonyms in the names of Dr. Ambrosius Wolfgang Bäuml, Maria Wischanowska Gawronska, aka Maria Vallin Ballin, and Don Carlos Vallin Ballin, former Karl Wertheim.   We had an numbered account with the code word 1250 Montreal – owner Maria de Vallin but it was liquidated years ago and due to Swiss Banking regulations we are sorry that we cannot tell you anything because according to article 962 OR we only have to keep the documents for 10 years.  According to the company accounts of Interwiko AG it is not enough to be the heir of the supervisory or managing members, only people who are marked in the commercial register are allowed to get information.  For your information, you should consider contacting The Swiss Bank Ombudsman . . .*

15

1    79)    At this point, Plaintiff's predecessors had still not discovered evidence of the wrongdoing

2    of Defendant Banks, its agents or Hoffmann.

3    80)    As a result of the mis-information given by Credit Suisse, the investigator and consultant

4    directed further inquiries to one of the agents for Hoffmann (who by now was deceased) and tried to

5    arrange a meeting in November 2011 with Marimón. However, Marimón refused the request for a

6    meeting but his son could not hide and agreed to meet. After the meeting, Marimón's son wrote and

7    explained that he had consulted with his father and that they did not know of the death of Dr. Bäuml

8    until years later in 2006 and that his father could not remember how much money there was because

9    so much time had passed and that he doubted there was much money because if there had been so

10    much money, it would have been something he might remember and in any event, he had no

11    knowledge of what if anything happened to any money claimed to belong to Dr. Bäuml. And, he

12    does not know of his brother (Frederico Marimón Garnier) being involved in any foundation account

13    in Switzerland. And any documents had long since been destroyed and that there were no

14    electronically stored documents. These statements were in fact false.

15    81)    In January 2012, for the first time, letters and phone calls were directed the Legal &

16    Compliance Departments of Defendant Banks, by representatives and consultants working with the

17    heirs, and informed Defendant Banks that there appeared to be evidence connecting Defendant

18    Banks to the missing Wertheim Family fortune and requesting documents and information about The

19    Wertheim Family assets, and the transfers from Credit Suisse to Deutsche Bank and the present

20    status and accounts belonging to the estate of Dr. Bäuml. In response, Defendant Banks provided

21    no information and directed the heirs to Defendant Deutsche Bank Geneva.

22    82)    In January 2012, despite additional inquiries, Defendant Banks continued to refuse to

23    provide information or documents related to the estate, assets or accounts of Dr. Bäuml.

16

83)     From June, July & August 2012, Defendant Banks, their Chief Executive Officers, Managers, Directors and Supervisory Board were requested to produce all bank records and documents related to the estate, assets and accounts of Dr. Bäuml and an accounting and restitution of the monies and assets.

84)     Defendant Banks continued to refuse to cooperate, refuse to provide the requested documents and in fact continued to lie about the existence of assets and account that were transferred to it from Credit Suisse in the name of Dr. Bäuml or as to which Dr. Bäuml or his companies was / were the beneficial owners.

## Defendant Banks' Wrongdoings

85)     Defendant Banks were failed to properly supervise their officers, directors and representatives, specifically its/their General Counsel and General Secretary in charge of legal affairs at Deutsche Bank Spain, Luis Marimón Garnier and directors/officers Pierre Diehr and Jaime Espinoza at Deutsche Bank Geneva.

86)     Defendant Banks failed to comply with their own Rules of Corporate Government, related to accounting, internal accounting control and auditing matters related to violations by Senior Deutsche Bank Directors and Officers involved with transfers / taking of assets from accounts and possibly connected safe deposit boxes at Credit Suisse belonging to Dr. Bäuml, or his companies or over which he was beneficial owner and which accounts, monies and assets Defendant Banks' directors and/or officers caused or helped to be transferred / deposited into account number 132012 INT at Deutsche Bank (Suisse) SA Geneva.

87)     Defendant Banks failed to comply with their own regulations regarding identity verifications, beneficial owners, foreign currency transfer reporting requirements, estate and tax compliance and other matters that were involved in opening and transferring into accounts – including numbered, secret, nominee and/or trustee accounts and safe deposit boxes, at Deutsche

1   Bank with the huge sums of money, assets, bearer bonds, securities, foundation assets and the other

2   assets that were part of The Wertheim Family Fortune and to which Dr. Bäuml was the sole and

3   rightful heir and beneficial owner.

4      88)   Defendant Banks allowed these acts to be taken without the knowledge or consent of the

5   lawful heirs of Dr. Bäuml.

6      89)   Defendant Banks allowed their directors, officers and senior financial officials – who had

7   actual or apparent conflicts of interest - to exercise absolute control over the accounts and assets of

8   Dr. Bäuml or to which they knew or should have known belonged to him and his heirs.

9      90)   Defendant Banks allowed its Directors and Officers, to operate without regard to the

10  apparent conflicts of interest, internal rules and regulations of Deutsche Bank and in what also

11  appears to have been an effort to not only unlawfully exercise control over "client or fiduciary or

12  trust funds" but also evade compliance with applicable estate, corporate and persons tax liabilities.

13     91)   Defendant Banks allowed its/their Directors and Officers to assist Hoffmann as he

14  implemented the goals of *Operation Werwolf* to steal the assets of Dr. Bäuml and The Wertheim

15  Family Fortune.

16     92)   Defendant Banks allowed its/their Directors and Officers to take or earn monies for

17  themselves or otherwise get benefit from their assistance to Hoffmann as he implemented the goals

18  of *Operation Werwolf* to steal the assets of Dr. Bäuml and The Wertheim Family Fortune.

19     93)   From 1990s to the present, Defendant Banks failed to cooperate with the heirs, Plaintiff's

20  predecessors, or to account for the transferred assets.

21     94)   From the 1990s to the present, Defendant Banks concealed their wrongful acts, destroyed

22  documents and made material misrepresentations in response to inquiries from heirs to the estate and

23  assets of Dr. Bäuml.

18

1    95)    From the 1990s to the present, Defendant Banks engaged in systematic and continuous

2    efforts to conceal their wrongful acts so as to frustrate Plaintiff's predecessors' ability to locate and

3    recover the assets of Dr. Bäuml, to get an accounting of or for the assets of Dr. Bäuml, that were

4    transferred to Defendant Banks, and to gain access to bank records / documents with which to

5    demand the return of the assets of Dr. Bäuml and where necessary (such as now) to make claims

6    against those involved in the wrongful taking, misappropriation, conversion and concealment of the

7    assets of Dr. Bäuml and The Wertheim Family Fortune.

8                                    **CAUSES OF ACTION**

9                                   **First Claim for Relief -**
10              **Damages Resulting from Destruction of Bank Records**
11
12    96)    Plaintiff incorporates paragraphs 1 to 95 of the Complaint as if fully set forth herein.

13    97)    Defendant Banks had a contractual, legal and fiduciary duty to preserve the

14    documents and records related to The Wertheim Family Assets and the accounts in the name

15    of Dr. Bäuml, as well as cash in bank accounts, stocks and bearer bonds, real estate holdings,

16    corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica

17    collections and other assets.

18    98)    Defendants violated their aforesaid duties.

19    99)    During the period from 1990 to present, Defendant Banks claim (only recently) that they

20    destroyed all records that could have related to The Wertheim Family Assets and accounts in the

21    name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings,

22    corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica

23    collections and other assets.

24    100)   Plaintiff has been damaged by Defendant Banks' destruction of records related to

25    The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in

26    bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds,

1  art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, which damages are

2  anticipated to be **in excess of one billion dollars**, subject to proof at trial.

3  **Second Claim for Relief -**
4  **Conspiracy to Destroy Bank Records and Interfere with Depositors' & Account Holder Rights**

5
6      101)   Plaintiff incorporates paragraphs 1 to 95 of the Complaint as if fully set forth herein.

7      102)   During the period from 1990 to the present, Defendant Banks and Hoffman

8  conspired with one another to prevent Plaintiff from gaining access to evidence and

9  documents related to The Wertheim Family Assets and the accounts in the name of Dr. Bäuml

10  as well as the assets in safe deposit boxes.

11      103)   During the period from 1990 to the present, Defendant Banks and Hoffman

12  conspired with one another to evade their obligations under banking and governmental rules

13  and regulations and agreements made for the benefit of depositors, heirs and successors, that

14  required Defendant Banks to comply, cooperate and assist Plaintiff and his co-owners efforts

15  to gain access the records, documents and other materials related to The Wertheim Family

16  Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and

17  bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries,

18  clocks, furniture & Judaica collections and other assets.

19      104)   During the period from 1990 to present, Defendant Banks, their agents and

20  Hoffmann conspired with one another to conceal destruction of records, documents and other

21  materials related to The Wertheim Family Assets and accounts in the name of Dr. Bäuml,

22  including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold,

23  silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, in

24  an effort to prevent Plaintiff from discovering the additional causes of action and claims.

25      105)   Defendants' acts were unlawful and violated agreements made with and/or for the

26  benefit of The Wertheim Family, Dr. Bäuml and their heirs and successors.

106)   Plaintiff and The Wertheim Family heirs, successors and representatives have been damaged by Defendant Banks destruction of records related to The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, which damages are anticipated to be **in excess of one billion dollars**, subject to proof at trial.

### Third Claim for Relief - Bailment

107)   Plaintiff incorporates paragraphs 1 to 95 of the Complaint as if fully set forth herein.

108)   When Defendant Banks, their agents and Hoffmann took and accepted possession of the transfers/deposits of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, they did so with express knowledge that The Wertheim Family Assets and accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks, bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets belonged to the Interest Association of Wertheim Heirs.

109)   Defendant Banks, its agents and Hoffmann at no time had more than a custodial interest in The Wertheim Family Assets and accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, pursuant to applicable laws and post-war treaties, which required Defendant Banks to safeguard the property for benefit of its / their rightful owners.

110)   Defendant Banks, their agents and Hoffmann's possession of The Wertheim Family Assets and accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and

21

1   bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries,

2   clocks, furniture & Judaica collections and other assets, constituted an express or implied-in-fact

3   bailment contract for the benefit of members of The Interest Association of Wertheim Heirs.

4       111)    Under the bailment and fiduciary contract, Defendant Banks, their agents and

5   Hoffmann owed The Wertheim Family, Dr. Bäuml and their survivors, heirs, successors and

6   representatives a duty of care to protect the property and to return it to them. Defendants at

7   all times understood that The Wertheim Family Assets and the accounts in the name of Dr.

8   Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate

9   assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and

10  other assets, remained the property of Plaintiff and members of the Interest Association of

11  Wertheim Heirs, who retained the right to demand its return.

12      112)    Defendant Banks, their agents and Hoffmann have received substantial financial

13  benefits from their possession of The Wertheim Family Assets and the accounts in the name

14  of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings,

15  corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica

16  collections and other assets, far exceed any costs they may have expended in storing the assets.

17      113)    Plaintiffs and other members of the Interest Association of Wertheim heirs presently

18  own and have a right to possession of The Wertheim Family Assets and the accounts in the

19  name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings,

20  corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica

21  collections and other assets.

22      114)    Plaintiff and/or other members of the Interest Association of Wertheim Family

23  heirs have demanded the return of The Wertheim Family Assets and the accounts in the name

24  of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings,

1  corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica

2  collections and other assets. Defendants breached their duties by rejecting the demands. Any

3  further demand would be futile.

4     115)  Plaintiff individually and as a member of the Interest Association of Wertheim

5  Heirs has been damaged by Defendants' breach of their bailment obligations and refusal to

6  return The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including

7  cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver,

8  diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, and is

9  entitled to restitution, or payment of for his interests which is valued **in excess of one billion**

10  **dollars** subject to proof at trial.

11  **Fourth Claim for Relief - Conversion**

12     116)  Plaintiff incorporates paragraphs 1 to 95 of the Complaint as if fully set forth herein.

13     117)  By refusing to return to return The Wertheim Family Assets and the accounts in the

14  name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings,

15  corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica

16  collections and other assets, pursuant to the bailment relationship among the parties, Defendants

17  knowingly converted The Wertheim Family Assets and the accounts in the name of Dr. Bäuml,

18  including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold,

19  silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets.

20     118)  To the extent that Defendant Banks, their agents and Hoffmann purported to

21  convert or otherwise knowingly exercised ownership rights over The Wertheim Family

22  Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and

23  bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries,

24  clocks, furniture & Judaica collections and other assets, that were inconsistent with the terms of

1  the bailment relationship, Defendants unlawfully concealed their conversion from Plaintiff

2  and members of Interest Association of Wertheim Heirs.

3      119)   At no point did Plaintiff or other members of the Interest Association of Wertheim

4  Heirs consent to Defendants' exercise of ownership rights over The Wertheim Family Assets

5  and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer

6  bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks,

7  furniture & Judaica collections and other assets.

8      120)   Plaintiff and other members of The Interest Association of Wertheim Heirs have been

9  damaged by the conversion of their property and are entitled to restitution, or payment of their

10  interest in The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including

11  cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver,

12  diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, which

13  interest is valued to be **in excess of one billion dollars**, subject to proof at trial.

14                    **Fifth Claim for Relief - Constructive Trust**

15      121)   Plaintiff incorporates paragraphs 1 to 95 of the Complaint as if fully set forth herein.

16      122)   Defendants wrongfully obtained The Wertheim Family Assets and the accounts in

17  the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate

18  holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture &

19  Judaica collections and other assets, through violations of international law, duress and deceit.

20      123)   Defendants have continued to wrongfully retain The Wertheim Family Assets and

21  the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds

22  real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks,

23  furniture & Judaica collections and other assets, despite demand for its return.

24

124)    As a result, Plaintiff and members of The Interest Association of Wertheim Heirs are entitled to the imposition of a constructive trust on The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, currently in possession of Defendants, obligating Defendants to return and/or pay compensation in an amount valued **in excess of one billion dollars** subject to proof at trial.

125)    In addition, Plaintiff and members of The Interest Association of Wertheim Heirs are entitled to an accounting of the assets, valuables and works of art subject to constructive trust.

### Sixth Claim for Relief - Accounting

126)    Plaintiff incorporates paragraphs 1 to 95 of the Complaint as if fully set forth herein.

127)    Defendants never accounted for The Wertheim Family Assets and accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, which they have had in their possession for since at least 1991.

128)    As a result of the bailment relationship created among the parties, Defendants had a fiduciary duty to return The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, to Plaintiff and members of The Interest Association of Wertheim Heirs upon demand. Defendants have failed to fulfill that duty.

129)    Only Defendants know the whereabouts of the property deposited that was and should still be within their possession, custody or control.

1    130)   Plaintiff, his predecessors and other members of The Interest Association of

2    Wertheim Heirs, have no adequate remedy at law.

3    131)   Plaintiff and members of The Interest Association of Wertheim Heirs are entitled to an

4    accounting of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml,

5    including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold,

6    silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets,

7    that was and should still be within their possession, custody or control, and all monies which

8    Defendants earned or received there from.

9                    **Seventh Claim for Relief - Declaratory Relief**

10   132)   Plaintiff incorporates paragraphs 1 to 95 of the Complaint as if fully set forth herein.

11   133)   An actual case or controversy has arisen between Plaintiff and Defendants

12   concerning the right to ownership and possession of The Wertheim Family Assets and the

13   accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds,

14   real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks,

15   furniture & Judaica collections and other assets.

16   134)   Defendants have wrongfully retained The Wertheim Family Assets and the

17   accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds,

18   real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks,

19   furniture & Judaica collections and other assets, and have refused to provide restitution to

20   Plaintiff or members of The Interest Association of Wertheim Heirs.

21   135)   Defendants contend that they are not required to restitute The Wertheim Family

22   Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and

23   bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries,

24   clocks, furniture & Judaica collections and other assets, or any portion or interest to Plaintiff or

26

1  members of Interest Association of Wertheim Heirs or that they have no documents that would show

2  any entitlement to such assets or the return thereof.

3      136)   Plaintiff and members of the Interest Association of Wertheim Heirs contend that

4  Defendants never have obtained good title to any potion of The Wertheim Family Assets and

5  the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds,

6  real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks,

7  furniture & Judaica collections and other assets, because the relationship among Plaintiff and

8  members of the Interest Association of Wertheim Heirs and Defendants was that of a bailment.

9      137)   Plaintiff and other members of the Interest Association of Wertheim Heirs are

10  entitled to a declaratory judgment declaring him / them to be the true owners of The

11  Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank

12  accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art,

13  antiques, tapestries, clocks, furniture & Judaica collections and other assets, and directing

14  Defendants to return the assets that are now, or which may later come to be, in their

15  possession, or to compensate them for their interest in the works, which interest is valued **in**

16  **excess of one billion dollars** subject to proof at trial.

17          **Eighth Claim for Relief – Restitution Based on Unjust Enrichment**

18
19      138)   Plaintiff incorporates paragraphs 1 to 95 of the Complaint as if fully set forth herein.

20      139)   As described above, Defendants have been unjustly and unlawfully enriched at the

21  expense of Plaintiff and members of the Interest Association of Wertheim Heirs.   Defendants

22  obtained The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including

23  cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver,

24  diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, through

27

1   violations of international law, duress and deceit, and have wrongfully withheld and refused to

2   return the assets to Plaintiff or other members of the Interest Association of Wertheim Heirs.

3       140)   Plaintiff has no adequate remedy at law.

4       141)   As a result of Defendants' unjust enrichment, Plaintiff and other members of the

5   Interest Association of Wertheim Heirs is entitled to restitution of The Wertheim Family

6   Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and

7   bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries,

8   clocks, furniture & Judaica collections and other assets, that came into their custody, possession

9   or control or compensation for same which is valued to be **in excess of one billion dollars**

10  subject to proof at trial.

11          **Ninth Claim for Relief – Restitution Based on Equitable Disgorgement**

12
13      142)   Plaintiff incorporates paragraphs 1 to 95 of the Complaint as if fully set forth herein.

14      143)   As described above, Defendants have been unjustly and unlawfully enriched at the

15  expense of Plaintiff and members of The Interest Association of Wertheim Heirs.  Defendants

16  obtained The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including

17  cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver,

18  diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, through

19  violations of international law, duress and deceit, and have wrongfully withheld from and/or

20  refused to return the deposited assets, from Plaintiff and other members of The Interest

21  Association of Wertheim Heirs.

22      144)   Plaintiff and other members of the Interest Association of Wertheim Heirs have no

23  adequate remedy at law.

24      145)   As a result of Defendants' unjust enrichment, Plaintiff and other members of the

25  Interest Association of Wertheim Heirs are entitled to equitable disgorgement of The Wertheim

28

1    Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts,

2    stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques,

3    tapestries, clocks, furniture & Judaica collections and other assets, or compensation for same in an

4    amount valued **in excess of one billion dollars**, subject to proof at trial.

5       146)   In June, July and August 2012, demand letters were delivered to Defendant Banks

6    informing them of the claim sounding in destruction of bank records and reminding them of their

7    contractual and fiduciary obligations to cooperate with regard to The Wertheim Family Assets and

8    the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds,

9    real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks,

10   furniture & Judaica collections and other assets, and specifically requested and demanded production

11   and preservation of records.

12      147)   In response to the 2012 Demands, Defendant Banks refused to meet and refused to

13   cooperate with requests of The Interest Association of Wertheim Heirs, acting on behalf of Plaintiff

14   and others.  Plaintiff and his representatives explicitly sought to deal with these issues so that the

15   issues could be resolved honorably, expeditiously and without the need to resort to litigation and the

16   accompanying potential public attention to issues involving Nazis, German and Swiss Banks which

17   were involved with the transfers, conversion, misappropriation and/or outright theft of Jewish assets

18   and the attendant concealment and destruction of documents and bank records.

19      148)   A formal Demand for the return and restitution of The Wertheim Family Assets and

20   the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds,

21   real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks,

22   furniture & Judaica collections and other assets, has been delivered to and refused by Defendants.

23   No further demand is necessary and any further demand would be futile.

24

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

**A.** **On the First Claim for Relief:** for damages as a result of destruction of records thereby impairing Plaintiff's ability to make civil claims and for compensation **in an amount in excess of one billion dollars** for The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, subject to proof at trial;

**B.** **On the Second Claim for Relief:** for damages resulting from conspiracy to destroy bank records and interference with depositors' and account holders' rights, related to The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, impairing Plaintiff's ability to make civil claims and for compensation **in an amount in excess of one billion dollars** for The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, subject to proof at trial;

**C.** **On the Third & Fourth Claim for Relief:** for a bailment order directing Defendants to return to Plaintiff or the Interest Association of Wertheim Heirs, The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, or pay compensation for conversion in an amount **in excess of one billion dollars**, subject to proof at trial;

**D.** **On the Fifth Claim for Relief:** for an order declaring that Defendants hold as constructive trustees, for and on behalf of Plaintiff and members of The Interest Association of Wertheim Heirs of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, or pay compensation in an amount **in excess of one billion dollars**, subject to proof at trial;

30

1      **E.**      **On the Sixth Claim for Relief:** for an order directing Defendants to account to

2   Plaintiff and members of The Interest Association of Wertheim Heirs, for The Wertheim

3   Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts,

4   stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques,

5   tapestries, clocks, furniture & Judaica collections and other assets, or pay compensation in an

6   amount **in excess of one billion dollars**, subject to proof at trial;

7      **F.**      **On the Seventh Claim for Relief:** for an order declaring that Plaintiff and the

8   other members of The Interest Association of Wertheim Heirs are the owners of the contents

9   of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in

10   bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds,

11   art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, and to return same

12   or pay compensation in an amount **in excess of one billion dollars**, subject to proof at trial;

13      **G.**      **On the Eighth Claim for Relief:** for an order unjust enrichment and directing

14   Defendants to pay Plaintiff and members of The Interest Association of Wertheim Heirs are

15   the owners of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml,

16   including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold,

17   silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets,

18   and to pay restitution in an amount **in excess of one billion dollars**, subject to proof at trial;

19      **H.**      **On the Ninth Claim for Relief:** for an order for restitution based on unjust

20   enrichment and directing Defendants to pay Plaintiff and members of The Interest

21   Association of Wertheim Heirs are the owners of The Wertheim Family Assets and the

22   accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds,

23   real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks,

24   furniture & Judaica collections and other assets, and to pay restitution in an amount **in excess of**

25   **one billion dollars**, subject to proof at trial;

26      **I.**      **For an order awarding exemplary, special and/or punitive damages** for

27   Defendants wrongful conduct;

28      **J.**      **For pre- and post-judgment interest** on any award; and

31

1       **K.**      **Awarding** Plaintiff and members of The Interest Association of Wertheim

2    Heirs such other and further relief, as this Court deems just and proper.

3

4    Dated: September 5, 2012                    Edward D. Fagan, individually and as a member of
5          Boca Raton, FL                        Interest Association of Wertheim Heirs
6                                                 5708-01 Arbor Club Way, Boca Raton, FL  33433
7                                                 Tel/Fax # (561) 372-9296 / (561) 948-2707
8                                                 Email: faganinternational@gmail.com
9                                                 Plaintiff Pro Se
10

32

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV12- 7582 PA (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☒)<br>Edward D. Fagan, individually and as a member of the: "Interest Association of Wertheim Heirs" | DEFENDANTS<br>Deutsche Bank AG; Deutsche Bank (Suisse) Geneva; Deutsche Bank (Spain) SA and Hans Hoffmann, deceased Consul General of Germany to Kingdom of Spain in Malaga |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Edward D. Fagan, 5708-01 Arbor Club Way, Boca Raton, FL 33433<br>Tel # 561-372-9296 | Attorneys (If Known)<br>Not Yet Known |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No          ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER<br>PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

## CV12-7582

**FOR OFFICE USE ONLY:**   Case Number:

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                          CIVIL COVER SHEET                          Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, **and** one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Plaintiff Fagan resides in Palm Beach County, FL. |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Deutsche Bank AG principal residence is in Germany; Deutsche Bank (Suisse) Geneva principal residence is in Switzerland; Deutsche Bank (Spain) SA principal residence is in Spain; and Hans Hoffmann was Deceased in Spain |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | The claims arose in Germany, Spain and Switzerland and some property that was the subject of the actions is believed to have been in California, in San Benito County and in New York County, NY |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): *Edward Fagan PC*        Date  5 September 2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |