MILBANK, TWEED, HADLEY & McCLOY LLP
Robert J. Liubicic (SBN 271465)
rliubicic@milbank.com
601 South Figueroa Street, 30th Floor
Los Angeles, CA  90017-5735
Telephone: (213) 892-4000
Facsimile: (213) 629-5063

MILBANK, TWEED, HADLEY & McCLOY LLP
Sander Bak (*Pro Hac Vice*)
sbak@milbank.com
Nicole Vasquez Schmitt (*Pro Hac Vice*)
nschmitt@milbank.com
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

Attorneys for Defendants Deutsche Bank AG,
Deutsche Bank (Suisse) SA, and Deutsche Bank S.A.E.

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Edward D. Fagan, individually, and as a member of the "Interest Association of Wertheim Heirs",<br><br>Plaintiff,<br><br>v.<br><br>Deutsche Bank AG, Deutsche Bank Suisse Geneva, Deutsche Bank Spain SA and Hans Hoffmann, deceased Honorary Consul General of Germany to Spain,<br><br>Defendants. | Case No. CV 12-07582 DSF(MANx)<br><br>**DECLARATION OF PROF. DR. PETER NOBEL IN FURTHER SUPPORT OF DEUTSCHE BANK AG, DEUTSCHE BANK (SUISSE) SA, AND DEUTSCHE BANK, S.A.E.'S MOTION TO DISMISS**<br><br>Complaint Filed:  September 5, 2012<br>Judge:  Hon. Dale S. Fischer<br>Hearing Date:  None unless ordered by Court (*See* ECF No. 29)<br>Hearing Time:  1:30 p.m.<br>Courtroom:  840 - Roybal |

I, **PROF. DR. PETER NOBEL**, born 1945, a citizen of Switzerland, residing at Dufourstrasse 29, P.O. Box 1372, 8032 Zurich, Switzerland, Attorney and Professor, **MAKE OATH** and, pursuant to 28 U.S.C. § 1746, herewith state as follows:

1. I submit this declaration in further support of the motion by Defendant Deutsche Bank AG, Frankfurt Germany ("Deutsche Bank"), Deutsche Bank (Suisse) SA ("Deutsche Bank Geneva") and Deutsche Bank, S.A.E. ("Deutsche Bank Spain") to dismiss the Complaint and to reply to incorrect statements in Plaintiff's Declaration dated November 29, 2012 ("November 29 Declaration") and his Opposition to Deutsche Banks' Motion to Dismiss dated November 30, 2012 and filed on December 3, 2012 ("Opposition").

2. As far as my professional background and qualifications are concerned, I refer to sections 2 to 12 of my first expert report.

I. **Background Facts**

1. I have also read the November 29 Declaration and the Opposition brought by Edward Fagan, on behalf of himself[1], against Deutsche Bank AG, Deutsche Bank Geneva, Deutsche Bank Spain and Hans Hoffmann, deceased Honorary Consul General of Germany to Spain. It is rather difficult to identify the Plaintiff's precise claims.

---

[1] Contrary to what is alleged in the Complaint dated September 5, 2012, which states that it was brought by Edward Fagan on behalf of himself and as a member of the "Interest Association of Wertheim Heirs", I understand that Mr. Fagan says in his more recent filings that the lawsuit is brought by himself, for himself and is based upon a notarial deed and claimed inheritance rights (November 29 Declaration p. 12).

2. I have been asked by the attorneys for the Defendant Banks (Deutsche Bank AG, Deutsche Bank Geneva and Deutsche Bank Spain) for my views on the issues brought forward by the Plaintiff in his additional filings. For the avoidance of doubt, I am an expert in Swiss law and thus, this expert opinion is limited to Swiss law, including Swiss international law.

II. **Switzerland as an Alternative Forum for Plaintiff's Claims**

A. **Claims against Other Defendants**

3. As already mentioned in my first expert report, Switzerland is a contracting state of the revised Lugano Convention.[2] Spain and Germany are also contracting states of the Convention. The Convention governs the jurisdiction and the recognition and enforcement of judgments in civil and commercial matters.

4. Pursuant to Art. 2 para. 1 of the Convention, persons domiciled in a State bound by the Convention shall, whatever their nationality, be sued in the courts of that State. Deutsche Bank Geneva has its domicile in Geneva; thus, it can be sued in Switzerland.

---

[2] The Convention on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters (Lugano Convention) was concluded in Lugano on 30 October 2007. The signatories are the Swiss Confederation, the European Community, the Kingdom of Denmark, the Kingdom of Norway and the Republic of Iceland. It is the successor to the Lugano Convention on jurisdiction and enforcement of judgments in civil and commercial matters of 16 September 1988, which is why it is often referred to as the revised Lugano Convention.

5. According to Art. 6 para. 1 of the Lugano Convention a person domiciled in a State bound by this Convention may also be sued where he is one of a number of defendants in the courts for the place where any of them is domiciled, provided the claims are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from a separate proceedings.

6. Art. 6 of the Lugano Convention aims at efficiency in proceedings and serves to avoid conflicting decisions.[3] It provides for a special jurisdiction in the event that several persons are sued together and the claims are particularly closely connected.[4] The prerequisite of a close connection is given if a collective proceeding and decision seems appropriate to avoid contradictory decisions.[5]

7. In the current case it may be assumed that Plaintiff's claims can be brought to the court in Geneva against all Defendants because these claims seem closely connected to each other.

8. In addition, I understand that all of the Defendant Banks have stated that they would consent to jurisdiction over this same lawsuit in Switzerland in the event that the Court were to dismiss the lawsuit on forum non conveniens grounds. Jurisdiction over an individual or entity in Switzerland can be obtained by that individual or entity's consent.

---

[3] BSK LugÜ-Rohner/Lerch, Art. 6 para. 1.
[4] BSK LugÜ Rohner/Lerch, Art. 6 para. 11.
[5] BSK LugÜ Rohner/Lerch, Art. 6 para. 29 ; Siehr, Lugano-Übereinkommen zum internationalen Zivilverfahrensrecht Kommentar, Art. 6 para. 30.

-3-

9. As mentioned in my first expert report, the Lugano Convention governs the recognition and the enforcement of judgements in civil and commercial matters. Thus, a judgment rendered in Switzerland would be recognized in Spain and in Germany without any special procedure being required (Art. 33 para. 1 of the Lugano Convention).

**B.   Obtaining a Fair Trial in Switzerland**

10. Switzerland is a member state of the European Convention on Human Rights ("ECHR"), as is Spain and Germany. The ECHR is a treaty to protect human and fundamental rights in Europe. Art. 6 para. 1 ECHR provides for a fair trial and reads as follows:

> "In the determination of his civil rights and obligations […], everyone is entitled to a fair and public hearing within a reasonable time by an independent and impartial tribunal established by law. Judgement shall be pronounced publicly […]."

11. Thus, there is, apart from the Swiss constitutional guarantee (see sections 27 – 30 of my first expert report), also an international guarantee for an independent and impartial tribunal in Switzerland. The Convention is also overseen by the European Court of Human Rights in Strasbourg and the Council of Europe. As already mentioned in my first expert report (section 29), the ultimate judicial authority for judgments of the Federal Supreme Court is the European Court of Human Rights.

**C.   The Hague Convention**

12. Further, Switzerland, as well as Spain and Germany, are contracting states to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters. Thus, a Swiss judicial authority may request

the competent authority of Spain, by means of a letter of request, permission (pursuant to Art. 3 of the Convention), to obtain evidence or to perform some other judicial act (Art. 1 of the Convention).

13. When executing the request, the authority to whom it is directed (i.e., the Spanish authority) shall apply the appropriate measures of compulsion in the instances and to the same extent as are provided by its internal law (i.e., Spanish laws) for the execution of orders issued by the authorities of its own country or of requests made by parties in internal proceedings (Art. 10 of the Convention).

D. **Costs of a Proceeding in Switzerland**

14. The court costs in Switzerland are rather minor and depend, prima facie, on the amount in controversy of the claim submitted. The amount in controversy determines the basic court fees. In addition, the expenditure of time as well as the complexity of the case is also taken in consideration. Therefore, in exceptional cases, the basic court fee may be doubled (Art. 6 of Geneva's Civil Court Fees Act[6]). As a general rule, it is the losing party that has to bear all the court fees.

---

[6] « Règlement fixant le tarif des frais en matière civile ». According to Art. 17 of this act, the court fees of pecuniary claims are set forth are as follows (CHF 1.- is equivalent to USD 1.12) :

| Amount in Controversy | Court Fee |
|---|---|
| - up to 10 000 CHF | between CHF 200 – CHF 2 000 |
| - from CHF 10 001 – CHF 30 000 | between CHF 1 000 – CHF 3 000 |
| - from CHF 30 001 – CHF 100 000 | between CHF 2 000 – CHF 8 000 |
| - from CHF 100 001 – CHF 1 000 000 | between CHF 5 000 – CHF 30 000 |
| - from CHF 1 000 001– CHF 10 000 000 | between CHF 20 000 – CHF 100 000 |

15. Furthermore, in Switzerland attorneys generally base their charges for services rendered on hourly rates. Contingency fees are allowed in a very limited manner and are, for the most part, not employed in Switzerland. Moreover, according to Swiss procedural rules, the losing party must also pay the attorney fees of the winning party. However, commonly the entire amount of the attorney fees are not covered as the court usually makes some reductions with respect to these fees.[7]

---

| | |
|---|---|
| - from CHF 10 000 001 | between CHF 100 000 – CHF 200 000 |

[7] In Switzerland, each Canton enacts its own schedule for attorney fees applicable to court proceedings; in addition to taking the difficulties of the case and the amount of work done into consideration, particular attention is given to the amount in controversy. According to Art. 85 of Geneva's Civil Court Fees Act, the attorney's fees in pecuniary claims are set forth as follows (caveat, however, that the fees indicated may be 10% higher or lower depending on the difficulties of the case and the work done):

| Amount in Controversy | Reimbursement |
|---|---|
| - up to CHF 5 000 | 25% of the amount in controversy but at least CHF 100 |
| - between CHF 5 000 and CHF 10 000 | CHF 1 250 plus 23% of the amount in controversy that exceeds CHF 5 000 |
| - between CHF 10 000 and CHF 20 000 | CHF 2 400 plus 15% of the amount in controversy that exceeds CHF 10 000 |
| - between CHF 20 000 and CHF 40 000 | CHF 3 900 plus 11% of the amount in controversy that exceeds CHF 20 000 |
| - between CHF 40 000 and CHF 80 000 | CHF 6 100 plus 9% of the amount in controversy that exceeds CHF 40 000 |
| - between CHF 80 000 and CHF 160 000 | CHF 9 700 plus 6% of the amount in controversy that exceeds CHF 80 000 |
| - between CHF 160 000 and CHF 300 000 | CHF 14 500 plus 3,5% of the amount in controversy that exceeds CHF 160 000 |
| - between CHF 300 000 and CHF 600 000 | CHF 19 400 plus 2 % of the amount in controversy that exceeds CHF 300 000 |

### III. Information Rights

16. In the Plaintiff's Complaint (¶ 95) it was stated that "Defendant Banks had a contractual, legal and fiduciary duty to preserve the documents and records related to The Wertheim Family assets and the accounts in the name of Dr. Bäuml (…)". However, in his Opposition, Plaintiff states that it was Deutsche Bank Director Marimón who personally caused and directed that *Bäuml's trustee accounts* be transferred to account no. 132012 INT at Deutsche Bank in Geneva.

17. Thus, it is apparent that there might not even have been a contractual relationship between Dr. Bäuml and the Deutsche Bank. It appears that Dr. Bäuml may only have been the beneficial owner of the accounts. Thus, if there was no contractual relationship between the beneficial owner and the bank[8], the contractual rights, such as information rights, also do not pass on to the heirs.

18. Regardless of whether such information rights exist or not, as outlined in my first expert report (para. 48 et seq.), banks are only obliged to preserve

| | |
|---|---|
| - between CHF 600 000 and CHF 1 million | CHF 25 400 plus 1,5% of the amount in controversy that exceeds CHF 600 000 |
| - between CHF 1 million and CHF 4 million | CHF 31 400 plus 1% of the amount in controversy that exceeds CHF 1 million |
| - between CHF 4 million and CHF 10 million | CHF 61 400 plus 0,75% of the amount in controversy that exceeds CHF 1 million |
| - from CHF 10 million | CHF 106 400 plus 0,5% of the amount in controversy that exceeds CHF 10 million |

---

[8] The contractual relationship between the bank and the account holder is considered as res inter alio acta.

-7-

documents for 10 years. Therefore, banks can generally not be held liable after this term.

### IV. Action for Recovery of Inheritance

19. In his new filings, Plaintiff refers to the prescriptive period of 30 years for the right to bring an action for recovery of inheritance against a defendant acting in bad faith pursuant to Art. 600 para. 2 Swiss Civil Code ("CC"). However, this provision is not applicable.

20. First, as I explained in my first expert report (section 23), it is impossible to determine from the Complaint which jurisdiction's laws should apply in administering the estate. However, the Plaintiff claims in his November 29 Declaration and Opposition that the testator's estate is a German estate governed by German law. If that is true, the Swiss inheritance provisions (i.e., Art. 600 CC, which governs the statute of limitations applicable to actions for recovery of inheritance) would not apply. But more facts are necessary to determine whether Plaintiff's claims are accurate.

21. Second, Plaintiff claims that under Art. 600 para. 2 CC the applicable statute of limitations in cases of bad faith is 30 years. Art. 600 CC refers to the statute of limitations applicable to an action for recovery of inheritance pursuant to Art. 598 CC. Pursuant to Art. 598 CC, a person who believes that, as a legal or named heir, he has a better claim than the current possessor to an estate, or part thereof, may assert his claim by bringing an action for recovery of inheritance. Thus, only a legal or named heir has standing to sue. As outlined in my first expert report, the Complaint did not provide any information as to whether the Plaintiff is an heir (section 58). Further, an

-8-

action for recovery of inheritance would require that the Defendant Banks are the current "possessor(s) to an estate or a part thereof," which does not seem to be the case. Art. 598 et seq. CC do not apply to the claims asserted by the Plaintiff, such as, e.g., torts, unjust enrichment, and destruction of bank records. I note as well that I have already discussed the relevant statutes of limitations in my first expert report, and there was no need for discussion of Art. 600 CC.

## V.  Bank's Liability for Acts of its Officers

22. In connection with actions in tort (namely the asserted failure of the Deutsche Bank to supervise its director Marimón), Swiss law would be the governing law as the alleged tort was committed, or in any event the results of the alleged tort occurred, in Switzerland (Art. 133 para. 2 FAIPL).

23. According to Art. 55 para. 2 CC, the governing bodies bind the legal entity by concluding transactions and by their other actions. However, this is only the case if the officers were exercising acts in the course of their business activities and not if they were acting as private persons.[9] Art. 55 para. 2 CC in connection with Art. 41 Swiss Code of Obligations ("CO") provide for a civil liability of the legal entity for the unlawful action of their governing bodies.

24. As outlined in my first expert report (section 64 et seq.), Art. 41 CO sets forth four general prerequisites for torts (unlawful act, damages, adequate causal connection and fault). If these four prerequisites are cumulatively met

---

[9] BSK ZGB I-Huguenin, Art. 55 para. 28.

and they can be proved by the injured party, then the latter is entitled to compensation for its damages.

25. I have already outlined that Art. 60 CO provides a statute of limitations for claims in tort and, with respect to this, I refer to the statements in my first expert report (section 67-69). It is thus apparent that Plaintiff's claims became time-barred after 10 years, which would start to run from the date on which the wrongful act took place, provided that the penal law does not provide for a longer statute of limitations.

## VI. Conclusions

26. Switzerland would be a competent forum for Plaintiff's claims. Swiss law guarantees the adequate protection of an independent and impartial tribunal and, thus, also of a fair trial. International conventions facilitate the processing of a claim and also the enforcement of a judgment. Therefore, Switzerland would also be an adequate forum. The allegations of the Plaintiff are erroneous.

---

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 14, 2012 in Zurich, Switzerland.

_____
Prof. Dr. Peter Nobel

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 601 South Figueroa Street, 30th Floor, Los Angeles, California 90017.

    On December 14, 2012, I served the foregoing document(s) described as **DECLARATION OF PROF. DR. PETER NOBEL IN FURTHER SUPPORT OF DEUTSCHE BANK AG, DEUTSCHE BANK (SUISSE) SA, AND DEUTSCHE BANK, S.A.E.'S MOTION TO DISMISS** on the interested parties in this action:

    __X__ by placing ___ the original __X__ a true copy thereof enclosed in sealed envelopes addressed as follows:

**Edward D. Fagan**
**Interest Association of Wertheim Heirs**
**5708-01 Arbor Club Way**
**Boca Raton, FL 33433**
**faganinternational@gmail.com**

__X__   **BY ELECTRONIC TRANSMISSION**: The foregoing document was transmitted via the Court's ECF System to the parties listed on the attached service list.

__X__   **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 14, 2012 at Los Angeles, California.

                        /s/ Alice Garcia
                        Alice Garcia